Renetta M. **PREDMORE**

v.

Lew **ALLEN**, Lieutenant General, United States Air Force, Director National Security Agency, Fort George G. Meade, Maryland, and the United States of America.

Civ. No. 73-1036-K.

United States District Court,
D. Maryland.

June 20, 1975.

**1054**

Bruce J. Terris and Suellen T. Keiner, Andra N. Oakes, Washington, D. C., Champe C. McCulloch, Baltimore, Md., for plaintiff.

Jervis S. Finney, U. S. Atty. and Virginia S. Draper, Asst. U. S. Atty., Baltimore, Md., for defendants.

FRANK A. KAUFMAN, District Judge.

Plaintiff Renetta M. Predmore, a female employee of the National Security Agency, Fort George G. Meade, Maryland, (hereinafter referred to as "NSA") has instituted the within action pursuant to, *inter alia,* the jurisdictional provisions of 42 U.S.C. §§ 2000e–5(f)(3) [1] and 2000e–16(c), (d) [2] and 28

See note 2 on page 1055.

1. That statute provides:

(3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and adminis-

U.S.C.A. § 1346(a)(2).[3] Defendant Allen is Director of NSA. Predmore alleges that she and similarly situated female employees of the G–6 Office of the G–Group of NSA have, on the basis of their sex, been discriminatorily denied promotion as a result of certain practices of the G–6 promotional system. Predmore additionally alleges that she was subjected to coercion and reprisal by her NSA superior, one Frederick B. Cole, as a result of complaints Predmore filed with an Equal Employment Opportunity Counselor in which Predmore charged that she had been discriminatorily denied a promotion on September 22, 1972, and that certain NSA officials wrongfully interfered with the processing of her complaint.

Plaintiff asserts that such alleged discrimination, coercion and interference violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 *et seq.*,[4] 5 U.S.C. §§ 7151[5] and 7154,[6] Exec-

tered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

2. Those statutory provisions state:

(c) Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

(d) The provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder.

3. That statute provides:

(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\*      \*      \*      \*      \*

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

4. Section 2000e–16 provides:

(a) All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies (other than the General Accounting Office) as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

5. Section 7151 provides:

It is the policy of the United States to insure equal employment opportunities for employees without discrimination because of race, color, religion, sex, or national origin. The President shall use his existing authority to carry out this policy.

6. Section 7154 provides:

\*      \*      \*      \*      \*

(b) In the administration of \* \* \* [provisions relating to classification of governmental positions, pay rates, rate systems, review of agency operations and

utive Order 11478 (1969) (Administrative Record 663–64), certain Civil Service Commission regulations relating to equal employment opportunity,[7] a NSA Personnel Management Manual establishing NSA policies and procedures to insure its employees of such opportunities,[8] and the Back Pay Act, 5 U.S.C. § 5596.[9]

Plaintiff seeks to bring the within proceeding as a class action pursuant to Federal Civil Rule 23(b)(2).[10] and requests a wide range of equitable relief to eradicate alleged discrimination in the G–6 office of NSA. Specifically, Predmore has asked this Court to enjoin defendant Allen and his successors, subordinates and attorneys from discriminating against plaintiff and other class members on the basis of sex and from perpetuating any policies or practices which may interfere with the rights of plaintiff or other class members; to require defendant to comply fully with NSA's Personnel Management letter dated November 25, 1971,[11] to make all supervisory personnel aware of the same, and to apply NSA's promotion criteria uniformly and without regard to sex; and to require defendant to appoint women to serve as members of NSA's promotion panel, to document the basis for future promotion choices, and to take whatever other actions may be required to eliminate NSA's alleged pattern and practice of sexual discrimination. Further, plaintiff asks this Court to require defendant to present to this Court, within 30 days from the issuance of final judgment herein, "a plan, in form suitable for entry as a decree, showing precisely and in detail how NSA will comply with the Court's order". Plaintiff additionally seeks protection against reprisal or retribution flowing from any of her attempts to "vindicate her rights". Also, Predmore has asked this Court to require defendant to issue a formal letter of reprimand to Frederick Cole, Predmore's former superior, for his part in the events in question.[12] Finally, Predmore seeks a

certain Civil Service appointments], discrimination because of race, color, creed, sex, or marital status is prohibited with respect to an individual or a position held by an individual.

(c) The Civil Service Commission may prescribe regulations necessary for the administration of subsection (b) of this section.

7. *See* 5 C.F.R. § 713.201 *et seq.*

8. Personnel Management Manual 30–2(U), a copy of which is contained in the Administrative Record at 669–82.

9. That statute provides as follows:

(a) For the purpose of this section, "agency" means—

(1) an Executive agency;

(2) the Administrative Office of the United States Courts;

(3) the Library of Congress;

(4) the Government Printing Office; and

(5) the government of the District of Columbia.

(b) An employee of an agency who, on the basis of an administrative determination or a timely appeal, is found by appropriate authority under applicable law or regulation to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the pay, allowances, or differentials of the employee—

(1) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect an amount equal to all or any part of the pay, allowances, or differentials, as applicable, that the employee normally would have earned during that period if the personnel action had not occurred, less any amounts earned by him through other employment during that period; and

(2) for all purposes, is deemed to have performed service for the agency during that period, except that the employee may not be credited, under this section, leave in an amount that would cause the amount of leave to his credit to exceed the maximum amount of the leave authorized for the employee by law or regulation.

(c) The Civil Service Commission 'shall prescribe regulations to carry out this section. However, the regulations are not applicable to the Tennessee Valley Authority and its employees.

10. It is to be noted that plaintiff asks for back pay only for herself and that plaintiff's claims herein do not seemingly pose any need for other members of the class sought to be established to be awarded back pay in order to avoid unfairness or inequity.

11. *See* discussion *infra* at p. 1057.

12. Cole was admonished by his superior, John Morrison, on December 27, 1972, but

declaratory judgment that the complained-of activities of NSA officials violate Title VII, 5 U.S.C. §§ 7151–54, Executive Order 11478 (1969), and various provisions of 5 C.F.R. Part 713; the award of back pay in the amount of the differential in pay and related benefits between the amount she has in fact earned and the amount she would have earned had she been promoted on September 22, 1972; and reimbursement for her expenses in connection with this case, including reasonable attorneys' fees, pursuant to 42 U.S.C. §§ 2000e–5(k) [13] and 2000e–16(d).[14]

Defendant Allen has filed a motion to dismiss, and in the alternative has moved for summary judgment on the basis of administrative proceedings initiated by Predmore pursuant to which the Board of Appeals and Review (hereinafter referred to as "BAR") [15] of the Civil Service Commission (hereinafter "CSC") denied relief to plaintiff in connection with the complaints which form the basis of the within case. Plaintiff has submitted a cross-motion for summary judgment on the basis of that record, while secondarily pressing the contention that she is entitled to a trial *de novo* in this Court should this Court deny her motion for summary judgment. A motion by plaintiff to join the United States as a party defendant for the purpose of perfecting jurisdiction under 5 U.S.C. § 5596 [16] was not opposed, and was granted in open Court on March 14, 1975.

The material facts of this case are not in dispute. On November 25, 1971, NSA issued a Personnel Management Letter (hereinafter "PML"), which established some thirteen criteria to be applied by all agency promotion panels in selecting individuals for promotion to all grades of GGD–15 and below. Criterion "g" of those thirteen criteria stated as follows:

> g. *EEO Considerations.* Deliberate care will be taken to ensure that all eligible candidates, including members of minority groups and women, will be considered for promotion on an equitable basis. The same degree of promise is desired in them as in all others. However, in considering the qualifications of members of minority groups and women, supervisors and managers should be aware that many of these individuals may have reached the zone of consideration without having been given a full opportunity for participating in desirable training and developmental assignments. In order to compensate for this, greater weight will be given to the criteria of job performance and potential when considering these employees.

On June 22 and 23, 1972, the promotion panel for the G–61 Division of the G–6 Office of NSA was convened by the Division Chief, William B. Huffman, for the purpose of selecting a candidate or candidates in connection with the one "GGD–11" promotion which was then available within the G–6 Office of NSA.[17] Although he had never read the PML and was unaware of Criterion g, William F. Stevenson, a branch chief in the G–6 Division, named Predmore as his top candidate for promotion. Other G–61 branch chiefs at that time submitted to Huffman the names of at least two other nominees for promotion,

---

such action preceded a finding by an Equal Employment Opportunity (hereinafter EEO) hearing examiner, Edison W. Tecco, that a reprimand of Cole should be issued. *See* discussion at p. 1061 *infra.*

13. That statute provides:
   (k) In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

14. *See* n. 2 *supra.*

15. This Court has been informed by counsel herein that the BAR is now called the "Appeals Review Board".

16. *See* n. 9 *supra.*

17. The "promotion" in question was not to a specific new position but to a higher grade level within the candidate's career field.

namely Richard Ward and Grover Heinds.

In mid August, 1972, the promotion panel for the entire G–6 Office was convened by Frederick B. Cole, Chief of G–6. At that time, Huffman presented to Cole the names of the G–61 Division's candidates, including Ward, Heinds, and Predmore. After reviewing the names of those candidates, Cole asked each division chief to narrow his recommendations to a single candidate. Huffman thereafter submitted to Cole Ward's name, while James A. Green, Chief of Division G–63, submitted to Cole the name of one Alan R. Danahy.

On September 22, 1972, Danahy's promotion was announced. On September 25, 1972, Predmore, admittedly unaware of the mechanics of promotion decisions, visited Cole and asked him to explain why Danahy, and not she, had received the promotion. After receiving no answer she found satisfactory, Predmore filed with EEO counselor Samuel W. Dent an informal charge of sex discrimination in which she alleged that the promotional system of G–6 had discriminated against her on the basis of her sex.

On October 11, 1972, during a meeting held between Dent, Predmore, and a G–Group Staff member, Francis A. Raven, Chief of the entire G–Group, informed Dent that Raven would see to it that Predmore was promoted at the earliest opportunity. On that same date, after learning of Raven's decision so to promote Predmore, Cole argued to Raven that such a promotion would be unfair to other G–6 personnel who also deserved promotion. Raven acceded to Cole's request not to promote Predmore at that time.

On October 12, 1972, Cole called Predmore and Huffman into Cole's office to discuss plaintiff's EEO complaint, stated that he was "hurt" by plaintiff's filing of the complaint, and that he found the EEO investigation "distasteful". In an emotionally-charged meeting, Cole defended his promotion of Danahy.

On October 16, 1972, Milton S. Zaslow, then Deputy Assistant Director of NSA for Production, summoned Predmore to appear before him. Predmore refused to appear without her representative. Zaslow then insisted that Predmore come to his office that afternoon whether or not her representative was then available. When plaintiff and her representative met with Zaslow, the latter indicated to Predmore that he was aware of her complaint, took a "serious view of" the same, and proposed personally to look into the matter (R. 208). At the same meeting, Predmore requested that Zaslow allow the EEO staff of NSA to continue to process her formal complaint, and Zaslow responded that he had no objection to the same.

On October 18, 1972, Predmore filed a formal written complaint with NSA's Director of EEO in which complaint Predmore stated, in pertinent part:

2. The only reason I can think of for my not being selected for promotion is the fact that I am female, and females appear to be discriminated against within G6 as evidenced by the small number of females in supervisory or management positions in the G6 organization. To the best of my knowledge, women constitute 51% of G Group and hold 21% of the supervisory and management positions of G Group. Within G6, however, women hold less than 2% of the supervisory and management positions.

3. Though Mr. Fred Cole, Chief of G6, has stated to me that he made the promotion selection, I think it is inappropriate to single him out as the "discriminatory official." What I am charging is that the promotion *system* of G6 has discriminated against me because I am a woman. Since the process of selection for promotion is held behind closed doors, I am not in a position to cite exactly which person or persons contributed to this discrimination. [R. 103; emphasis in original.]

On October 19, 1972, Predmore filed a second formal complaint charging Cole with coercion. That complaint stated, in pertinent part:

1. Though I have no reason to believe that Mr. Cole acted from any but the best of intentions, his actions on 12 October 1972 must be viewed by me as coercion because of the EEO complaint I had made on 25 September 1972. [R. 104.]

During November 1972, Raven, at least tentatively, ordered that paperwork be prepared so that Predmore might be promoted to GGD–11. When Cole learned of the same, he protested to Zaslow, Raven's superior, and asked Zaslow to have that paperwork rescinded. Predmore's promotion was subsequently denied by the action of Major General Morrison, Zaslow's superior and Assistant Director of Production for NSA.

On December 22, 1972, Peter F. Newton, Special Assistant to the Director of NSA for EEO, concluded that there had been neither sex discrimination against Predmore nor any coercion by Cole, although Newton acknowledged that Cole had acted in an "imprudent manner" and would be "admonished by the proper authorities".

On December 27, 1972, Predmore requested a hearing on her two complaints. A hearing was held on February 7 and 8, 1973 before Edison W. Tecco, an EEO complaints examiner. After hearing testimony by Predmore, Cole, Huffman, Stevenson, and Carl E. Cross, Danahy's superior, and after receiving certain detailed statistical evidence concerning the alleged lack of upper-level promotions offered to G–6 female employees, the complaints examiner concluded that a pattern of discrimination against women existed in the G–6 Office (R. 58, 59, 63, 65),[18] that several officials involved in the decision of whether to promote Predmore, including Huffman, had been unaware of and had failed to apply Criterion g (R. 54, 55), and that " * * * but for [such] discrimination [Predmore] * * * would have been promoted * * * " (R. 73) ahead of Danahy.[19]

Before comparing the relative qualifications of Predmore and Danahy, Tecco noted (at R. 49) that " * * * both candidates have been described as being eminently qualified for promotion * * * ", and that " * * * [t]he fact that both individuals are in different career fields complicates any attempt at objective analysis * * * ", so that uniform application of agency promotional criteria was of "tantamount importance". Tecco then stated (at R. 54–57):

* * * We have here, the complainant, a woman, and a professional in her career field, competing with a male, Mr. Danahy, who is not professionalyzed in his career field supposedly being rated for promotion by the same criteria. * * *

* * * The complainant was not in a position where she could have served overseas. Great emphasis was placed on Mr. Danahy's overseas service. The Examiner is of the opinion that undue emphasis was placed on this factor and thus it tended to influence agency officials in the selection of Mr. Danahy. It is evident throughout the testimony and the complaint file that the agency considers overseas assignments an important step in an employee's development. At this point in

18. Tecco did not make any specific determination as to whether that statistical pattern constituted a violation of Title VII or of any other statute or regulation.

19. Tecco specifically stated:
In light of the information in the record and obtained at the hearing indicating a pattern of discrimination against women, and in light of the complainant's qualifications for higher level positions the Examiner has concluded that the agency failed to give the complainant the consideration for employment at the GG–11 level which was given to Mr. Danahy and to male employees in G6. The Examiner further concludes that the complainant would have been promoted to GG–11 in the absence of sex discrimination. [R. 65.]

her career the complainant was not able to participate in this type of developmental assignment. It appears to this Examiner that this is where item "g" of the criteria should have been utilized as this is the type of a situation which item "g" addresses itself to. Yet the Division Chief, Mr. Huffman states he did not include item "g" in the criteria he used. In all fairness to the complainant the agency, according to item "g", should have given greater weight to her performance and potential. The agency has offered no evidence that they complied with item "g" in this appeal. The complainant possesses many of the factors recognized by the agency as making her eligible for promotion. These very factors would indicate that she merits promotion over Mr. Danahy. The complainant is professionalyzed in her field while Mr. Danahy is not. She has completed 67 hours of college credits, whereas Mr. Danahy is only a high school graduate. She had been employed at the agency since October 12, 1964, a period of approximately 8½ years, at the time of the promotion meetings. Mr. Danahy was hired on March 15, 1971 and thus had been an agency employee for about 1 year and 3 months at the time of the promotion meetings. It is also noted that Mr. Danahy is a retired Navy enlisted man of 21 years service. He had a break of 3 years from the time he left the Navy until he was hired by the agency. The complainant was in grade much longer as she was promoted to GG–09 on April 17, 1969. She had been in grade GG–09 for a period of 34 months (2 years 10 months). Mr. Danahy entered on duty as a GG–09 on March 15, 1971 and had been in grade for only 15 months. The complainant had also completed the CY 100 course. In view of the background of the complainant and her favorable comparison to Mr. Danahy the examiner is of the opinion that Mr. Danahy was given favored treatment.

The investigators also pointed out that Mr. Danahy's endeavors were more visible while the complainant was engaged in a long range activity which was not visible. It is also noted that the persons in attendance at the promotion meetings were *all male* employees. There is no evidence to indicate that any female employee had any input into the promotion meetings.

The National Security Agency is an arm of the Department of Defense and it is headed by a career military officer. The division in which Mr. Danahy is employed is headed by a Naval Officer. Mr. Danahy is a retired Navy man with 21 years of service. A reasonable person reviewing this entire file and the testimony at the hearing would almost have to conclude that in view of the complainants' [sic] background, years of service, educational achievements, outstanding performance, and time in grade, she should have received a promotion. * * *

Tecco concluded that Cole's actions at the October 12, 1972 meeting " * * * constituted coercion and even interference on his part in the complaint process * * * ", (R. 70) and an attempt by Cole " * * * to get the complainant to drop the pursuit of her complaint * * * " (R. 70), in violation of 5 C. F.R. § 713.261(a), which at the time of the hearing provided:

> Complainants, their representatives, and witnesses shall be free from restraint, interference, coercion, discrimination, or reprisal at any stage in the presentation and processing of a complaint, including the counseling stage under section 713, or any time thereafter.

Tecco also concluded that the investigations of Predmore's complaints undertaken by Zaslow (R. 71) and by one Paul E. Peksa [20] constituted usurpation of EEO powers and "appear[ed] to violate the spirit and intent of Executive Order 11478 issued by the President of

20. Peksa conducted an investigation of NSA sex discrimination at Raven's request (R. 234).

the United States on August 8, 1969 and the Equal Employment Opportunities Regulations of the Civil Service Commission and the National Security Agency." (R. 71.) Moreover, Tecco found that Cole had improperly been afforded access to the investigative files relating to Predmore's EEO complaint (R. 68, 72, 73). Tecco accordingly recommended that Predmore be promoted to GGD–11 retroactive to September 22, 1972; that " * * * [t]he Director of Civilian Personnel, NSA * * * take immediate steps to insure that all supervisory personnel are aware of the agency's rules and regulations governing promotions * * * "; and that " * * * [t]he agency * * * take steps to insure that women serve as members of these panels." (R. 74.) Tecco also recommended that Raven " * * * issue Mr. Cole a letter of reprimand for his actions * * * " (R. 74) in regard to alleged coercion of Predmore. Finally, Tecco recommended that " * * * the Director, NSA, must take immediate and positive steps to insure that all functions and duties of the Office of Equal Opportunity, NSA, as set forth under Part 713, Civil Service Regulations, and the agency's own EEO regulations, NSAPMM–30–2(U), Chapter 365, be exercised by that office along through its Director." (R. 74–75.)

On April 30, 1973, pursuant to 5 C.F. R. § 713.221, Lt. General Samuel C. Phillips, then Director of NSA, issued NSA's final decision on plaintiff's two complaints. Phillips rejected Tecco's finding of sex discrimination on the basis that Predmore had received "full and fair consideration" for the promotion, and stated that plaintiff's statistics concerning promotions did not constitute a prima facie case of discrimination. Of criterion "g", Phillips wrote to Predmore:

  * * * This specific criterion was not applied to you nor to all the other eligibles throughout G6. The Examiner concludes that had this criterion been applied to you, you would have been promoted. I consider his finding pure speculation.

  My finding is that even had this criterion been applied to you and to all other eligibles, there is no certainty or reasonable likelihood that you would have been selected for promotion at the time in question. * * * Since you were not recommended from your division for promotion to GG–11, you were never in competition with Mr. Danahy for this promotion. [R. 40.]

Phillips concurred in Tecco's finding that Cole had acted inprudently and stated that Cole would be admonished, but concluded that Cole had not acted coercively.

Plaintiff appealed from Phillips' decision to the BAR which filed its opinion on September 19, 1973. Therein the BAR concluded (at R. 9):

  After a careful and thorough review of all of the evidence of record in this case, the Board finds that the complainant was discriminated against because of her sex in her nonselection for promotion in September, 1972, in that the Board finds that the selection procedures discriminated against female employees. The Board finds no evidence of record to indicate that the complainant would in any event have been selected for the promotion had the proper procedures been followed and for that reason the Board cannot recommend the complainant's retroactive promotion as she requested.

Prior to so concluding, the BAR wrote at R. 6–8):

  The Board has carefully reviewed the steps whereby the complainant was not selected for promotion in September 1972 and finds no basis for making a determination regarding complainant's qualifications for promotion in comparison to the qualification of

the male employee who received that promotion. In this matter the Board finds, as has been claimed by the agency throughout the processing of this complaint, that at the final selection stage the complainant was no longer effectively in contention for the promotion since she was not the top nominee of her Division Chief. While the Unit Chief was not restricted to considering only the top nominee of each Division Chief, there is nothing in the record to indicate that this official did in fact consider any candidate other than the first choice of each Division Chief when the final selection for the promotion was made. On the other hand, the Board's review of the procedures whereby the selection of the top-rated candidate of each Division Chief was determined indicates that the complainant's sex was a factor in her failure to be promoted in September 1972.

* * * During the hearing into the instant complaint the Complainants Examiner showed conclusively that this definitive document [PML] was not referred to at any level of the proceedings which resulted in the promotion selections in September 1972 and in fact the guidelines were unknown to a majority of the supervisors who participated in those selections. While the record indicates that most of the criteria were applied to the various candidates, the record further shows that at no stage was the requirement listed as item "g" taken into consideration.

* * * * * *

By not considering this very important part of the agency promotion guidelines, the supervisory personnel participating in the selection proceedings in question placed themselves in considerable peril on the issue of having given equal consideration to the complainant in their deliberations. · Moreover, since the guidelines had been in effect since November, 1971, it appears that the supervisory personnel in G6 had not given proper consideration to *any* of the minority or female employees of that Group who had come up for promotion since that time. The Board finds this to be prima facie evidence that female employees of that group have been the victims of discrimination in promotion actions, since specific agency regulations regarding consideration of females were not being followed.

The Board further finds prima facie evidence that females were not being given proper consideration for promotion within G6. In most Federal agencies a competitive promotion calls for the convening of some form of promotion panel whose members will be selected from among employees of various components of the organization. This panel will then consider the various candidates for the position to be filled, and the end result of its deliberation will be a list of the top candidates for the position from which the selecting officer will usually make his choice. By the random nature of its membership, women and minorities will normally be represented on many of these panels and thereby members of these groups will have the opportunity of being (at least occasionally) judged by their peers. Promotion procedures within this agency, however, do not provide for any randomness of panel membership since the candidates for promotion are selected only by the employee's immediate supervisor with final selections made in concert with other supervisors. Since the supervision of G6 is made up exclusively of males, it follows that a situation is present that could easily lead to the perpetuation of a male hierarchy within that organization and the Board finds that the evidence indicates this to be the case in G6. While the Board agrees with the agency statement, contained in its rebuttal to the complainant's representations to the Board, that it is management's prerogative to adjudge which one position in G6 represented the greatest need of the GG–11

grade with respect to agency mission objectives, the law and Civil Service regulations require that such decisions be made within a context of due regard for agency regulations and of equal consideration for all employees. The Board believes that this was not true in the instant case, for reasons indicated above.

The Board has carefully considered the evaluation the agency had conducted by the Deputy Chief of G Group, a highly capable female supervisor, to measure the qualifications of the complainant against those of other individuals in her division who were also eligible for the promotion in question. Her evaluation led the Deputy Chief to the conclusion that complainant was not the most outstanding employee in the division. However, this evaluation notwithstanding, the Board finds that the complainant was in fact discriminated against by not being properly evaluated for the promotion at issue.

With regard to Predmore's complaints concerning Cole's coercion, the BAR simply stated that it had " * * * no authority to consider the issue of whether the supervisor * * * " whom the BAR had " * * * found to have interfered with [Predmore's] * * * rights in the filing of her complaint * * * " should be " * * * reprimanded or admonished, since disciplinary actions of this nature are an administrative matter to be taken care of within the agency." (R. 6.)

As to Predmore's claims that Cole had improperly interfered with the two subsequent decisions by Raven to promote her, the BAR found—

* * * no evidence that she was twice denied promotion following the filing of her complaint of discrimination as retaliatory actions for the filing of that complaint. Although the complainant claims that a recommendation for her promotion was twice cancelled after the intercession of the Unit Chief, the person she alleged as the discriminating official in the initial failure of promotion, the evidence of record indicates that the recommendations for her promotion were twice withdrawn because of a decision that her promotion outside of normal promotion procedures would be unfair to other employees who also merited consideration. [R. 8–9.]

Additionally, the BAR wrote:

With regard to the complainant's allegations concerning the role played by the agency Director of Equal Employment Opportunity, the Board finds no indication that this had any bearing upon the decision in her case. Part 713 of Civil Service Regulations ("Equal Opportunity"), Section 713.-204, states that the Director of Equal Employment Opportunity has the responsibility for advising the head of his agency with respect to the Equal Employment Opportunity program, the receipt and investigation of complaints of discrimination, and recommendations as to improvement and corrections needed. There is no prohibition in the regulations on providing technical advice at any stage in the processing of the complaint. The regulations make no reference to the necessity of providing to any complainant a copy of any opinion or other advisory given to the head of the agency by the Director of Equal Employment Opportunity.

The regulations also make no reference to the matter of whether the alleged discriminating official shall be permitted to review the complaint file. However, since all statements of witnesses and participants in the adjudication of a discrimination complaint are taken with the stipulation that the information is to be provided to all parties to the complaint, the Board finds no reason to believe that the accessibility of the entire file to the alleged discriminating supervisor had any adverse effect upon the complainant's rights under Equal Employment Opportunity regulations. [R. 9.]

The BAR refused to order any class-wide relief or any relief as to plaintiff except that she be given priority consideration for the next available promotion.

During the spring of 1973, Predmore was transferred on a temporary loan basis to NSA's G–4 Office. On June 3, 1973 Predmore became a permanent employee of that office. On October 21, 1973, two days subsequent to the filing of the within suit, plaintiff was promoted to GGD–11 within the G–46 Division of that office. Plaintiff was informed that her promotion was based solely on the merits of her G–4 performance and was without regard to the BAR's recommended relief.

## CLASS ACTION

As previously noted, plaintiff has sought to bring the within action in this Court on behalf of past and present female employees of G–6. Predmore's counsel has informed this Court during oral argument that Predmore seeks class action relief in order to ensure that her within claim for equitable relief relating specifically to NSA's G–6 Office will not be deemed moot, in view of her transfer to the G–4 Office of NSA and in view of the possibility that her employment by NSA could terminate prior to a final judgment in this case.

Defendants have opposed certification of a Rule 23(b)(2) class of present G–6 female employees on the grounds that the proposed class is not "so numerous that joinder of all members is impracticable", that plaintiff is not a representative who "will fairly and adequately protect the interests of the class", that plaintiff's claims are not "typical of the claims * * * of the class", that the class action is not in this case "superior to other available methods for the fair and efficient adjudication of the controversy" within the meaning of Rule 23, that plaintiff did not initiate a class action proceeding before the federal agency, and that the class action device is unavailable to federal plaintiffs unless each member of the class has first exhausted his administrative remedies.

The proposed class of G–6 female employees who were employed by NSA during 1972 would appear sufficiently numerous to render joinder impractical, whether that class consists of 121 members, as Predmore has asserted in her affidavit dated July 1, 1974, or whether that class consists of 66 members, as defendants appear to assert. Professor Moore has stated:

A reading of the cases convinces one that whether a number is so large that it would be impracticable to join all the parties is dependent not upon any arbitrary limit, but rather upon the circumstances surrounding the case; and there must be a positive showing of such circumstances.

\* \* \* \* \* \*

"Impracticability" does not mean "impossibility": it is sufficient to show that it is extremely difficult or inconvenient to join all members of the class.

3B J. Moore, Federal Practice ¶ 23.05 (1969 ed. & 1974 Supp.) (footnotes omitted).

Adequacy of representation by a plaintiff is ultimately a question of fact with respect to which that plaintiff must bear the burden of proof. *See Dennis v. Norwich Pharmacal Co.*, 5 FEP Cases 921, 922 (D.S.C.1973). In this case, it is apparent from the vigorous and effective advocacy of plaintiff's counsel that representation is adequate to protect the interests of the class. Furthermore, there has been no suggestion in this case that there exists any "possibility of any antagonistic interests" between Predmore and other class members, *see Sullivan v. Winn-Dixie Greenville, Inc.*, 8 EPD ¶ 9628, at 5676 (D.S.C.1974). Moreover, plaintiff is, as is required, a member of the class of the approximately 121 women who were allegedly G–6 employees during 1972 and whom she seeks to represent. *See* 7 C. Wright & A. Miller, Federal Practice and Procedure § 1761 (1972 ed.). And as a former G–6 employee, she has standing to represent a class which in-

cludes current members of that office to mount an "across the board" attack on discriminatory employment practices.[21]

██ Defendants contend that plaintiff's claims of sex discrimination are not "typical" of those of the proposed class. Not every claim of sex or racial discrimination qualifies a plaintiff as a class representative in a class action proceeding challenging such discrimination. For example, in a given case, the alleged discrimination may be facially so individualized and unique as to render any claim based thereon atypical of other claims of sexual discrimination. *See, e. g., Williams v. Mumford,* 6 EPD ¶ 8785, at 5384–85 (D.D.C.1973); *Dennis v. Norwich Pharmacal Co., supra* at 923. In the instant case, however, plaintiff's assertion that she was discriminated against by virtue of NSA's disregard of its own Equal Employment Opportunity criteria is supported by the conclusions of both Examiner Tecco and the BAR that NSA's disregard of those criteria resulted in employment discrimination against both Predmore and other female G–6 employees. While, as is true with many if not most events in life, the individual circumstances surrounding Predmore's own non-promotion may be said to be unique and unlikely ever to be exactly repeated, the test of typicality must not itself be framed so tightly as more often than not to render it impossible to meet. Put another way, the tail of typicality may not wag the dog of class action. In sum, defendants' assertions that Predmore's claims are atypical of those of the members of the class she seeks to represent cannot prevail in the context of the record in this case.

██ The question remains, however, as to whether certain of the 1972 Amendments to Title VII entitling fed-

eral employees to file civil actions in federal district courts [22] restricted the filing of class complaints by federal employees. On the one hand, nothing in the legislative history of those Amendments would appear to signify a legislative intent so to restrict the filing of class actions.[23] On the other hand, starting from the premise that aggrieved federal employees are entitled only to judicial review of administrative action,[24] several courts have recently reasoned that class actions are unavailable to federal employees except in instances where each named plaintiff and class member has exhausted administrative proceedings available to him. *See, e. g., Pointer v. Sampson,* 7 EPD ¶ 9326, at 7508–09 (D.D.C.1974). Nonetheless, the very rationale of *Pointer* appears to indicate that the within case may proceed as a class action. In that case, Judge Gasch stated (at n. 33):

> As noted by Judge Gesell in *Hackley [v. Johnson],* 360 F.Supp. at 1254 n. 11, CSC regulations allow investigation of discrimination in the context of a class action if there is evidence of *systematic racial discrimination.* Thus an administrative record could be developed as to a class question. 5 C.F.R. § 713.251. In dictum, Judge Gesell noted that if he were to reach the question of class actions in *Hackley,* "it is probable the matter could not now proceed as a class because of failure to exhaust administrative remedies." 360 F.Supp. at 1254 n. 11. [Emphasis supplied.]

In *Hackley v. Johnson, supra* note 24 (D.D.C.1973), Judge Gesell had stated (360 F.Supp. at 1254 n. 11):

> There is yet another reason that probably prevents this action from proceeding as a class matter. It ap-

21. *See Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1224 (5th Cir. 1969); *Harper v. Mayor & City, Council of Baltimore,* 359 F.Supp. 1187, 1192 (D.Md.1973), *modified sub nom., Harper v. Kloster,* 486 F.2d 1134 (4th Cir. 1973); *McBroom v. Western Electric Co.,* 7 EPD ¶ 9347 (M.D. N.C.1974); *Arnold v. Ballard,* 6 EPD ¶ 8838 (N.D.Ohio 1973).

22. *See* n. 2 *supra.*

23. *See* 2 U.S.Code Cong. & Admin.News (92d Cong., 2d Sess.1972), at p. 2137 *et seq.*

24. *See, e. g., Hackley v. Johnson,* 360 F. Supp. 1247, 1252 (D.D.C.1973) *reversed sub nom. Hackley v. Roudebush,* 520 F.2d 108 (D. C.Cir. 1975).

pears to the Court that Franklin's complaint did not present, nor did the agency *sua sponte* investigate this matter as a class action problem, an opportunity clearly provided by the new regulations of the United States Civil Service Commission. Therefore, if the Court had to reach the question, which it does not, it is probable the matter could not now proceed as a class because of a failure to exhaust administrative remedies.

In the within case, the BAR stated in its opinion (at R. 4) that "* * * on October 18, 1972 the complainant filed a formal complaint alleging that females were discriminated against in her organization in the matter of promotions * * *." That conclusion is supported by the record. Moreover, both Examiner Tecco's report and the decision of the BAR make it rather clear that Predmore's allegations of class discrimination were administratively exhausted.[25]

The possibility that this case might become moot by plaintiff's death or resignation may not in itself be a sufficient basis for certification of a class action. *See Wiesenfeld v. Secretary,* 367 F.Supp. 981, 986–87 (D.N.J.1973), *aff'd sub nom., Weinberger v. Wiesenfeld,* 420 U.

S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975).[26] Moreover, pursuant to 42 U.S. C. § 2000e–5(g),[27] plaintiff may be entitled to all the equitable relief she seeks herein if this Court should determine that defendant acted in violation of the mandates of Title VII, notwithstanding the fact that Predmore as an individual might not directly benefit from that relief. *See Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194, 1201–02 (7th Cir.), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 721 (7th Cir. 1969). *Cf. United States v. Wood, Wire & Metal Lathers,* 471 F.2d 408, 413 (2d Cir.), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2773, 37 L.Ed.2d 398 (1973).

Nonetheless, in the total context of this case, in which class certification is sought to ensure the availability of equitable relief to all members, and in which no further administrative inquiry into the particular circumstances surrounding the non-promotion of any individual class member other than plaintiff Predmore is apparently required and in which all of the relevant and material facts have seemingly already been both administratively considered and deter-

---

25. *See* pp. 1059, 1061, 1062, 1064 *supra.*

26. In view of plaintiff's quest for back pay, it is difficult to conceive how this controversy either has been mooted by her transfer or could be mooted by any future change in plaintiff's employment status. *See Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Ash v. Cort,* 496 F.2d 416, 419–20 (3d Cir. 1974), *rev'd on other grounds,* 422 U.S. 66, 95 S.Ct. 2080, 45 L. Ed.2d 26 (1975); 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3533 at 272–73 (1975 ed.).

27. That statute provides:

(g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employ-

er, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than. discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e–3(a) of this title.

mined, a single, expeditious class action proceeding is superior to separate quests for relief by class members, even though efficacious administrative procedures and remedies are available to each such person. Plaintiff appears fully to have satisfied all the class action prerequisites imposed by Federal Civil Rule 23. It is also to be noted that the relief plaintiff seeks herein for herself and others would seemingly not be available under 42 U.S.C. § 2000e–5(g) if defendants' conduct is viewed as not having violated Title VII itself, but rather only regulations of NSA which in and of themselves are apparently stricter than the mandates of Title VII. Against that background, the within proceeding will be certified as a Federal Civil Rule 23(b)(2) class action on behalf of females employed by NSA's G–6 Office on October 18, 1972, the date on which plaintiff filed her complaint with NSA's Director of EEO. Plaintiff's counsel is requested forthwith to submit appropriate notice documents and to mail same to the 121 designated class members. In that connection, plaintiff's counsel, on the record, has stated that plaintiff will bear the costs of notice to all such class members.[28]

---

**28.** The issue of whether notice to class members is required as a matter of due process in a class action brought pursuant to Federal Civil Rule 23(b)(2) is by no means a settled one. *Compare Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir. 1975), *with Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564–65 (2d Cir. 1968). *See Schrader v. Selective Service System*, 470 F.2d 73, 75 (7th Cir.), *cert. denied*, 409 U.S. 1085, 93 S.Ct. 689, 34 L.Ed.2d 672 (1972); *Zeilstra v. Tarr*, 466 F.2d 111, 113 (6th Cir. 1972); *Watson v. Branch County Bank*, 380 F. Supp. 945, 956–60 (W.D.Mich.1974) (Fox, J.); *Francis v. Davidson*, 340 F.Supp. 351, 361–62 (D.Md.), *aff'd*, 409 U.S. 904, 93 S.Ct. 223, 34 L.Ed.2d 168 (1972). *And see* Notes of Advisory Committee on Rules, Rule 23(c)(2) and (d)(2), 39 F.R.D. at 105–07. Nonetheless, under the circumstances of the within case, in which plaintiff has expressed through counsel a willingness to provide such notice at the expense of plaintiff, this Court is of the opinion that notice to all class members should be provided before any final resolution of the substantive issues presented herein.